**SANFORD HIGHWAY UNIT OF LOCAL 481, COUNCIL NO. 74, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO**

v.

**TOWN OF SANFORD et al.**

**INHABITANTS OF the MUNICIPALITY OF SANFORD et al.**

v.

**MAINE LABOR RELATIONS BOARD et al.**

Supreme Judicial Court of Maine.

Feb. 21, 1980.

Sunenblick, Fontaine & Reben, Stephen P. Sunenblick (orally), Portland, for Sanford Hgwy. Unit.

Gregory W. Sample, Asst. Atty. Gen., Augusta, for State of Maine, amicus curiae.

Roberts, Shirley & Humphrey, James J. Shirley (orally), Thomas E. Humphrey, Springvale, Wayne W. Whitney, Jr. (orally), Maine Labor Relations Board, Augusta, for defendants.

Before McKUSICK, C. J., WERNICK and GODFREY, JJ., and DUFRESNE, A. R. J.

WERNICK, Justice.

Before us are an appeal and a cross-appeal arising from the following civil actions which, though separately instituted, were consolidated for hearing, and heard, in the Superior Court (York County): (1) an action by the Sanford Highway Unit, Local 481 Council 74, American Federation of State and County Municipal Employees, AFL–CIO (the Union), in which the Maine Labor Relations Board (MLRB) joined as plaintiff, brought pursuant to 26 M.R.S.A. § 968(5)(D) against the Town of Sanford and various officers of that Town (the Town), seeking enforcement of an order entered April 5, 1979 by the MLRB pursuant to its determination, on the Union's complaint, that the Town had committed prohibited practices; (2) a complaint, under Rule 80B M.R.Civ.P., filed by the Union pursuant to 26 M.R.S.A. § 968(5)(F), seeking judicial review to establish that in its determination that the Town had committed prohibited practices, and in the remedies it prescribed, the MLRB did not go far enough; (3) a petition for review, filed by the Town pursuant to the Maine Administrative Procedure Act (APA), 5 M.R.S.A. § 8001 *et seq.*, for review of the April 5, 1979 Decision and Order of the MLRB; and (4) a Rule 80B complaint, filed by the Town pursuant to 26 M.R.S.A. § 968(5)(F), as an

alternative way of having judicial review of that same Decision and Order of the MLRB.

The appeal to this Court is by the Town and it attacks the following adjudications of the Superior Court: (1) the determination upholding the MLRB decision that the Town engaged in the prohibited practice of "bad faith bargaining"; (2) the dismissal, for lack of subject matter jurisdiction, of purported proceedings for judicial review in accordance with the provisions of the APA; (3) the determination, relative to the Rule 80B complaints of both the Town and the Union, affirming the decision and order of the MLRB against the Town and ordering compliance therewith—the Town's claim in this regard being that (a) the Superior Court wrongly regarded its jurisdiction to arise by virtue of 26 M.R.S.A. § 968(5)(F) rather than the APA and (b) on the merits, the MLRB lacked authority to order the reinstatement of employees discharged for having participated in an illegal strike; and (4) the order entered on the Union's Action to Compel, which required the Town to comply fully with the April 5, 1979 decision and order of the MLRB.

The Union has taken a cross-appeal, contending: (1) the MLRB erred in failing to conclude that certain actions of the Town were prohibited practices, and (2) the MLRB should have ordered the employees reinstated to their former positions effective the date they were discharged, rather than, as was ordered, effective the date of the MLRB's decision.

We deny both the appeal of the Town and the cross-appeal of the Union.

The issues before us arise from a breakdown in negotiations between the Town and the Union over a new collective bargaining agreement for a bargaining unit of Town Highway Department workers. The new agreement was to succeed a current one, of two years duration, which would expire on January 1, 1979. The parties met for the first negotiating session on September 5, 1978. Later during 1978, they met for bargaining on September 19, October 4, and December 11 (with a mediator), and thereafter they met in 1979 on January 31, February 7 and February 20.

On February 8, 1979, the Union filed a "prohibited practices" complaint with the MLRB alleging that the Town was engaging in a course of bad faith bargaining, in violation of provisions of Maine's Municipal Public Employee Labor Relations Law (M.P.E.L.R.L.), more particularly, 26 M.R.S.A. § 964(1)(E). On February 14, 1979, the employees in the bargaining unit went on strike. On February 16, 1979, the Town fired 24 employees who had struck. On February 23, 1979 the Union filed an amended prohibited practices complaint, and on February 28, 1979 the Town filed its response to the complaints. In light of the allegations contained in the complaints, the MLRB ordered expedited hearing of the case. On April 5, 1979, the MLRB issued its Decision and Order.

By the various means we have already described both parties invoked the Superior Court's review of this Decision and Order of the Board. On August 30, 1979 the Superior Court issued its Decision and Order which, we have previously explained, dismissed for lack of jurisdiction the Town's Petition for Review under Section 11001 of the APA, affirmed the MLRB's Decision and Order on the Town's and Union's Rule 80B complaints, and ordered the parties to comply with the MLRB Order.

*1.*

■ We address, first, the contention of the Town that the judicial review of MLRB decisions on prohibited practice complaints in the sphere of municipal employment is no longer as prescribed by the M.P.E.L.R.L. but is governed, since the APA has gone into effect, by the provisions of the latter statute, more particularly, Section 11001(1) and Section 8003 thereof:

"§ 11001. *Right to review*

"1. *Agency action.* Except where a statute provides for direct review or review of a pro forma judicial decree by the Supreme Judicial Court or where judicial review is specifically precluded or the issues therein limited by statute, any person who is aggrieved by final agency

action shall be entitled to judicial review thereof in the Superior Court in the manner provided by this subchapter. Preliminary, procedural, intermediate or other nonfinal agency action shall be independently reviewable only if review of the final agency action would not provide an adequate remedy."

"§ 8003. *Inconsistent provisions*

"Except where expressly authorized by statute, any statutory provision now existing or hereafter adopted which is inconsistent with the express provisions of the Maine Administrative Procedure Act shall yield and the applicable provisions of this Act shall govern in its stead."

The Office of the Attorney General of the State of Maine in a brief filed *amicus curiae* supports the Town's contention. The Union has not really taken a position on this issue, except to contend that should this Court decide that the APA is the governing statute, the Court should treat the Union's Rule 80B complaint as sufficient to comply with the requirements of the APA.

We decide, as did the Justice of the Superior Court, that, despite the APA, the judicial review provisions of the M.P.E.L.R.L. continue to govern judicial review of decisions of the MLRB on prohibited practice complaints in the area of municipal employment.

The Superior Court Justice found unpersuasive the argument that a general purpose to achieve uniformity in the judicial review of the decisions of administrative agencies mandates that the judicial review provisions of the APA govern MLRB determinations of prohibited practices in municipal employment relations. We agree. As the Superior Court Justice pointed out, in this sphere one large area of determinations by the MLRB, bargaining unit and bargaining agent determinations, will not in any

event be subject to judicial review under the APA. APA review of these agency determinations is precluded because 26 M.R.S.A. § 968(4), by reference to § 972, makes the Board's findings of fact final "in the absence of fraud"; the issues on review being thus otherwise "limited by statute", the express exception in Section 11001 of the APA comes into play.[1]

 Although we agree with the Superior Court Justice that achieving uniformity in the judicial review of the determinations of administrative agencies is not a persuasive reason for deeming the APA to govern the judicial review of prohibited practice determinations of the MLRB, we do not go so far in this regard as to accept one other aspect of the Justice's analysis. He added a makeweight point that the APA prescribes a "substantial evidence on the whole record" criterion of the scope of judicial review, and he regarded this as substantively different from the "clearly erroneous" standard prescribed in 26 M.R.S.A. § 968(5)(F) for the judicial review of MLRB prohibited practices determinations. Whether, as the Superior Court Justice concluded relying on the analysis in 4 Davis, *Administrative Law* § 29.02 (1958 and Supplements), the federal law recognizes such a difference ("clearly erroneous" connoting a lesser degree of judicial deference to administrative determinations of fact than "substantial evidence on the whole record"), we decide that in the law of Maine the difference is semantic, not substantive. This is shown by this Court's analysis in *Fitzgerald v. Baxter State Park Authority*, Me., 385 A.2d 189, 202 (1978), where we said:

"[T]he Superior Court's findings are *supported by substantial evidence and cannot be said to be clearly erroneous.*" (emphasis added)

---

1. It should be noted, too, that in the municipal labor relations sphere the judicial review of the binding determination of an "interests" arbitration panel will be pursuant to 26 M.R.S.A. § 972, either because such a panel is not an "agency" within the definition of 5 M.R.S.A. § 8002(2) or, in any event, because the issues are otherwise "limited by statute." For the

same reasons, the judicial review of the binding determination of a "grievance" arbitration panel will be under the Uniform Arbitration Act, 14 M.R.S.A. §§ 5927 *et seq. Maine School Administrative District # 5 et al. v. M.S.A.D. # 5 Teachers Association*, Me., 324 A.2d 308 (1974).

Thus, whether the words used are supported by "substantial evidence on the whole record" or "clearly erroneous", the substantive meaning connoted is that the findings of fact made by an administrative agency are to be upheld on judicial review if there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Maine Clean Fuels, Inc.*, Me., 310 A.2d 736, 741 (1973). We therefore now explicitly approve, as correctly reflecting the law of Maine in this regard, the statement in Field, McKusick and Wroth, *Maine Civil Practice* (1977 Supp.) § 80B.6:

> "In general, the court is without authority to overrule findings of fact by the administrative agency that are supported by substantial evidence. The test is the same as the 'clearly erroneous' test applied to findings of a Superior Court justice sitting without a jury." [2]

The position of the Town, and of the Attorney General as *amicus curiae*, would lead to the anomalous result that some of the Legislature's "comprehensive, self-contained" statutory scheme [3] for dispute resolutions under the M.P.E.L.R.L. would be retained after the effective date of the APA, while another part would be superseded. In *School Committee of Town of Easton v. Easton Teachers Association*, Me., 398 A.2d 1220, 1224 (1979) we decided that the general injunction provisions of 26 M.R.S.A. §§ 5 and 6, although on their face applicable to any labor dispute,

> "do not apply to such 'public' sector labor relations or labor disputes *unless*, and *except as*, Sections 5 and 6 are incorporated by express reference in 26 M.R.S.A. §§ 961–972." (emphasis in original)

On similar reasoning, we reject the argument that merely because of the extremely general provision of the APA in § 8003, the slower judicial review process of the APA supersedes the designedly speedier one provided by 26 M.R.S.A. § 968(5)(F) to be specifically applicable to "prohibited practices" proceedings under the M.P.E.L.R.L.

We reaffirm the cogent point made by the Justice of the Superior Court. The Legislature has devoted considerable time and energy to the subject of public employee labor relations in the past decade and has enacted a comprehensive and integrated set of statutes to establish Maine's public policy in the field of governmental employee relations. The speedy procedures for judicial review under § 968(5)(F), as well as under comparable sections of the State Employees Labor Relations Act, 26 M.R.S.A. §§ 979–979–M and the University of Maine Labor Relations Act, 26 M.R.S.A. §§ 1021–1034, are crucial to the maintenance of stability and harmony in public employee relations, particularly when, as under the Maine statutes, self-help remedies for the parties are very limited, or prohibited.

With this the basic reality in public sector labor relations in Maine, we think that the Legislature's omission to amend the foregoing statutory provisions when it undertook a comprehensive revision of the Maine statutes to conform them to the APA markedly weakens the cogency of the argument that the APA has superseded the M.P.E.L.R.L. as the governing charter for the judicial review of MLRB determinations of prohibited practices. That revision, P.L.1977, Chap. 694, contained 763 sections dealing with amendments designed to produce conformity with the APA; yet, it contained no amendments of the public employee labor statutes. Such action gives us reason to believe that the Legislature regarded the

---

**2.** That the Superior Court Justice applied the "clearly erroneous" formulation of the scope of review in the review he made, conceiving that standard to be different in meaning from the "substantial evidence" criterion, does not affect the correctness of the conclusions he reached. Since the Justice believed that the "clearly erroneous" standard required less deference to administrative findings of fact and thus allowed him a broader scope to overturn them, and he

nevertheless sustained the findings of the MLRB, he would necessarily have reached the same conclusion had he applied the "substantial evidence" standard as mandating a more restricted scope of judicial review.

**3.** *School Committee of Town of Easton v. Easton Teachers Association*, Me., 398 A.2d 1220, 1224 (1979).

various statutes dealing with public employee labor relations as a uniquely self-contained statutory whole to be preserved intact according to its own internal provisions, despite the APA. In sum, like the Justice in the Superior Court, we

"cannot believe the Legislature intended to repeal the judicial review provisions of the Labor Acts by implication or inference from generalized language. Nor can . . . [we] believe that when revising all of the statutes to bring them into conformity with the APA the Legislature merely overlooked the Labor Acts. . . . [H]aving developed comprehensive legislation to deal with the complex issues of public employee labor relations, the Legislature did not intend the APA to intrude upon that area."

The Superior Court correctly ruled that 26 M.R.S.A. § 968(5)(F), not the judicial review provisions of the APA, governed, here, as to its judicial review of the prohibited practice determinations of the MLRB.

*2.*

Turning to the issues on the merits of the dispute, we also agree with the Superior Court Justice that the MLRB's findings are "fully supported by the evidence."

██ On the basis of these findings, which the MLRB set out in considerable detail in its Decision and Order, the Board then applied what it considered the pertinent law and concluded that the Town had engaged in bad faith bargaining, a prohibited practice under 26 M.R.S.A. § 964(1)(E). The Board also held that the Union had engaged in an illegal strike, a prohibited practice under 26 M.R.S.A. § 964(2)(C)(3). Exercising its powers under 26 M.R.S.A. § 968(5)(C), the Board ordered both parties to cease and desist from engaging in prohibited practices and to commence negotiations. It also ordered that the discharged employees be reinstated without back pay, effective April 6, 1979 (the effective date of the Order).

The Town argues on appeal that because the employees had been discharged for "cause", the MLRB was without authority under 26 M.R.S.A. § 968(5)(C) to order them reinstated. Subsection (5)(C) states, *inter alia*, that upon a finding that a party has engaged in a prohibited practice the MLRB

"shall issue and cause to be served upon such party an order requiring such party to cease and desist from such prohibited practice and to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this chapter. No order of the board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause."

The Town asserts that an employee's participation in a strike which is illegal, and is a prohibited practice under 26 M.R.S.A. § 964(2)(C), is *per se* "cause" for discharge of that employee.

The MLRB responds that the question of whether or not the illegal strike constituted "cause" for discharge is for it to decide in the circumstances of each case. Because, here, the Board found that by its own prohibited practices the Town provoked the strike, the Board determined that the strike was not sufficient "cause" for discharge in this instance, and that reinstatement *without back pay* was appropriate, as a remedy restoring the status quo.

The MLRB correctly assessed its powers and duties in regard to the fashioning of remedial orders under 26 M.R.S.A. § 968(5)(C). "Cause" is nowhere defined in the Act. Absent such special definition, "cause" is an equitable concept which must be determined by the MLRB in light of the conduct of the parties and the purposes of the Act. *See Rockwell v. Board of Education,* 393 Mich. 616, 227 N.W.2d 736, 746 (1975). In clarifying the meaning of "for cause" under § 10(c) of the National Labor Relations Act, 29 U.S.C. § 160(c), which contains language virtually identical to that of 26 M.R.S.A. § 968(5)(C), the United States Court of Appeals for the First Circuit stated:

"it would seem that where an employee is discharged because he engaged in collective action and the discharge is found to be 'for cause', the action is not the type protected under § 7. . . . However, a determination that an employee is not engaged in a § 7 activity does not necessarily mean that, if he is discharged for his participation in the unprotected action, the discharge is 'for cause'. That depends on the surrounding circumstances. What is *cause* in one situation may not be in another." (emphasis in original) *National Labor Relations Board v. Thayer Co.*, 213 F.2d 748, 753, n.6 (1st Cir. 1954)

That opinion makes plain that it is for the Board to make the determination of what is discharge for cause, as well as whether reinstatement would effectuate the policies of the Act.

*Caribou School Department v. Caribou Teachers Association*, Me., 402 A.2d 1279, 1284–85 (1979) states this Court's view that where Maine labor statutes track the language of the National Labor Relations Act, it will be deemed the legislative intendment that, to the full extent which is reasonable, the MLRB shall have the powers under Maine law that federal law gives to the federal Labor Relations Board. We conclude, then, that the MLRB had the power to find, and in light of the Town's unfair labor practice in this case justifiably found, that the employees' strike, though illegal, was not sufficient "cause" for their discharge. The Board was therefore not prohibited from ordering reinstatement or back pay; it could take these actions or such other "affirmative action . . . as . . . . [would] effectuate the policies of . . . . [the M.P.E.L.R.L.]."

In the present case, the MLRB chose to order reinstatement. Because, however, the employees had engaged in an illegal strike, the Board saw fit to make no order for back pay, and in ordering reinstatement, it made the reinstatement effective only as of the effective date of its Order— approximately seven weeks after the discharge. In addition, the MLRB ordered both parties to cease and desist their prohibited practices and to commence bargaining.

We find this Order well designed to effectuate the policies of the Act. First, it seeks " 'a restoration of the situation, as nearly as possible, to that which would have obtained' but for the unfair labor practice[s]" *Caribou School Department v. Caribou Teachers Association, supra,* at 1284, citing *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941); that is, it puts the parties in the position of being able once again to bargain. Second, it discourages "self-help" by *both* parties, thus supporting the processing of grievances and complaints in accord with the provisions of the Act. The Town could have pursued relief under the terms of 26 M.R.S.A. §§ 964, 965 and 968 when the employees resorted to an illegal strike,[4] (including seeking an injunction under 26 M.R.S.A. § 968(5)(E)). It chose instead to fire the employees in question. In these circumstances, the MLRB having justifiably found that it was the Town's unfair labor practices which provoked the strike in the first place, the Town's position that reinstatement cannot be an available remedy is simply unsupportable. As the United States Court of Appeals, D.C. noted in *Local 833, UAW–AFL–CIO v. NLRB,* 112 U.S.App.D.C. 107, 111, 300 F.2d 699, 703 (D.C.Cir.1962):

"To hold that employee 'misconduct' automatically precludes compulsory reinstatement ignores two considerations which we think important. First, the employer's antecedent unfair labor prac-

---

4. The Town suggests that the employees should be denied reinstatement for failure to utilize all impasse resolution procedures available to them under 26 M.R.S.A. § 965 before undertaking an illegal strike. Although this is a factor which might properly be considered in balancing the equities and formulating a remedy, we agree with the MLRB's finding that given the conduct of the Town at the one mediation session when impasse resolution procedures were invoked, the employees were justified in concluding that further such proceedings would be a futile exercise.

tices may have been so blatant that they provoked employees to resort to unprotected action. Second, reinstatement is the only sanction which prevents an employer from benefiting from his unfair labor practices . . . which may weaken or destroy a union."

This language was relied on by the Supreme Court of Michigan in *Rockwell v. Board of Education, supra,* when, interpreting a grant of remedial authority cast in language almost identical to that of the Maine statute, the Court concluded:

"If MERC [Michigan Employment Relations Commission] should determine that the employing school district committed an unfair labor practice, MERC *may,* despite the illegality of the teachers' strike, order reinstatement." (emphasis in original) *Id.,* 227 N.W.2d at 746.

*3.*

In its cross-appeal the Union contends that the MLRB was wrong in concluding that the Town had committed only the one prohibited practice of refusing to bargain in good faith; that the Superior Court erred in affirming that erroneous conclusion of the Board; and that because of the several prohibited practices which it should have been found that the Town committed, the employees are entitled to back pay.

We reject all of these contentions. We have already decided that the MLRB's findings of fact were correctly sustained by the Superior Court. On this factual basis we find no errors of law by the Board in the conclusions it reached as to the respective prohibited practices of the parties. With particular reference to the issue of the Board's refusal to award back pay, the Superior Court Justice was obviously correct when he stated incisively and definitively:

"The fallacy in . . . [the Union's] reasoning is that even had the Board found these additional prohibited practices the Board would not have been justified in awarding the employees back pay because of their illegal strike."

The entry is:

Appeal denied. Cross-appeal denied.

Judgment of the Superior Court affirmed.

NICHOLS, GLASSMAN and ROBERTS, JJ., did not sit.