Elaine M. MERROW

v.

MAINE UNEMPLOYMENT INSURANCE COMMISSION.

Supreme Judicial Court of Maine.

Argued March 4, 1985.

Decided July 15, 1985.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Gerard O. Fournier (orally), Joseph M. Kozak, Augusta, for plaintiff.

Leanne Robbin (orally), Lendall Smith, Pamela Waite, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

The Plaintiff, Elaine Merrow, appeals from a judgment of the Superior Court (Kennebec County) affirming a determination by the Defendant, Maine Unemployment Insurance Commission, denying her unemployment insurance for the reason that the Plaintiff left regular employment voluntarily and without good cause attributable to such employment within the meaning of 26 M.R.S.A. § 1193(1)(A) (Supp. 1984–1985). Finding no error, we deny the appeal.

The Plaintiff was employed as the Director of Resident Care by Doris Skidgel, who owned Forest Hills Annex, a boarding care facility for mentally handicapped people which was licensed by the State of Maine and located in Augusta. During the Plaintiff's employment, Mrs. Skidgel also owned a second, smaller, facility adjacent to "the Annex." The Plaintiff began her employment at the Annex in May, 1980, and resigned on August 6, 1981. Beyond these basic facts, there was very little consistency between the testimony of the Plaintiff and that of her former employer.

Before the Commission the Plaintiff testified that prior to hiring her, Mrs. Skidgel did not show her any official written job description or explain what her duties would be. Instead, the Plaintiff testified that her understanding of her duties came from her "procedure" from the State.[1] The Plaintiff understood that the individual assuming the position of Director of Resident Care was to be responsible for primary patient care. She also understood that she would be scheduling people beneath her in the organization, ordering and administering medicines, and, generally, doing "anything involving the resident." The Plaintiff further understood that she was to be responsible for the "accountant's duties." It is unclear exactly what the latter duties were, but the Plaintiff acknowledged that she was given the facility's checkbook (with her name on it) and that she was to be responsible for the

facility's financial affairs. Upon starting work in May, 1980, however, the Plaintiff assumed the duties of both the Resident Care Director and the Administrator. She explained that the position of Administrator involved billing the State, handling the payroll of nine or ten employees, and scheduling the staff.

The Plaintiff further testified that during the initial months of her employment she performed these duties only with respect to the Annex, an eighteen-bed facility. Eventually, she became responsible for the second, smaller building that housed about six residents.

Within the first year of her employment the Plaintiff found herself working substantial overtime hours. The Plaintiff stated that she complained primarily to the facility's accountant, and not to her employer, because Mrs. Skidgel "put everything into his hands." The accountant, however, offered the Plaintiff little advice or assistance in alleviating her situation. The Plaintiff also testified that she confronted Mrs. Skidgel about the possibility of being compensated for her extra duties.

According to the Plaintiff, the tensions and frustrations she experienced at work were taking an increasing toll on her health. In particular, she was losing sleep. She claimed that Mrs. Skidgel would call her after hours and tell her to come in, saying, "This is what I'm paying for ... get in here." The Plaintiff testified that after several disturbing incidents, she could not "handle [her] job any longer," and she resigned.

In direct contrast to the Plaintiff's testimony, Mrs. Skidgel denied any knowledge of the Plaintiff's dissatisfaction with her job. Although Mrs. Skidgel was aware that the Plaintiff performed duties outside of the official Department of Human Services job description of "Director of Resident Care," she explained that the parties contemplated this arrangement when the Plaintiff was hired. In the employer's

1. The record discloses that the Plaintiff had extensive experience operating boarding homes.

words, she had hired the Plaintiff to "run the whole thing." Mrs. Skidgel testified, however, that the Plaintiff's duties were solely at the Annex. Specifically, the two women agreed that the Plaintiff would be responsible for patient care and payment of bills, as well as supervising and scheduling the staff. The employer said that she never asked the Plaintiff to work extra hours, but heard through residents that the Plaintiff had been coming in on weekends and had asked residents to call her instead of Mrs. Skidgel if they had problems. Mrs. Skidgel stated that if she had known that the Plaintiff was owed money for wages, she could have advanced money from the six-bed facility. The employer further testified that when the Plaintiff submitted her resignation, she explained that she had personal problems and "just couldn't handle it."

In its decision dated April 23, 1982, the Commission upheld the Appeal Tribunal, which had denied the Plaintiff benefits. The Commission concluded that although the Plaintiff did indeed work more than 40 hours per week, her overtime and compensation problems were caused by her own over-zealousness and her failure to communicate with her employer. As to the duties outside the official job description of Resident Care Director, the Commission found that the Plaintiff assumed these duties as part of her job when she accepted the position.

The Plaintiff then filed a petition for review by the Superior Court, which affirmed the decision of the Commission. From that judgment the Plaintiff brings her appeal to this Court.

 When reviewing a decision of the Maine Unemployment Insurance Commission, our test is to determine whether there exists any competent evidence to support the findings made by the Commission as well as to determine whether upon those findings the Commission has applied the correct law. *Bean v. Maine Unemployment Insurance Commission*, 485 A.2d 630, 632–633 (Me.1984); *Brousseau v.*

*Maine Employment Security Commission*, 470 A.2d 327, 329 (Me.1984). The remedial nature of the statute dictates a liberal construction in favor of the employee. *Brousseau*, 470 A.2d at 329. In this case the controlling statute is 26 M.R.S.A. § 1193(1)(A), which provides in relevant part as follows:

An individual shall be disqualified for benefits:

A. For the week in which he left his regular employment voluntarily without good cause attributable to such employment, . . . and disqualification shall continue until claimant has earned 4 times his weekly benefit amount in employment by an employer; . . . .

26 M.R.S.A. § 1193(1)(A) (Supp.1984–1985).

The Commission stated its "Reasons for Decision" in part as follows:

The Commission determines that the claimant left her job voluntarily without good cause attributable to the employment. It is uncontested that the claimant worked more than a forty (40) hour work week. However, it was the claimant's over-zealousness which often created this overtime situation. She would have the staff contact her to take care of problems instead of the administrator who was on-call for these problems. Although the claimant's conscientiousness is to be commended, she had the power to control the number of hours she worked each week.

In addition, the employer never refused to pay the claimant for the overtime hours. The claimant never complained to the administrator about the payment problem, but instead spoke only to the accountant. The claimant had it within her power to pay herself for those overtime hours and if this was not sufficient, she should have talked to the administrator about the problem of insufficient funds in the residence account.

The claimant also felt that her duties of scheduling staff, managing the finances, and keeping the books were duties outside her function as resident care di-

rector. However, the agreement between the employer and the claimant was that the claimant would completely manage the residence as part of her duties as resident care director. This was the agreement when the claimant took the job and the claimant assumed these duties as part of her job. Thus these additional duties do not constitute good cause for the claimant's leaving her job.

The Plaintiff does not contest that she left her employment voluntarily. Nor did the Commission suggest in its findings that she left her job for personal reasons, such that the cause was not "attributable to such employment." *See Toothaker v. Maine Employment Security Commission,* 217 A.2d 203, 209 (Me.1966). Thus, the inquiry becomes whether the Commission erred in finding that she left her employment "without good cause." In evaluating the Plaintiff's appeal, we note that good cause must be "measured against a standard of reasonableness under all the circumstances." *Bean,* 485 A.2d at 634; *Kilmartin v. Maine Employment Security Commission,* 446 A.2d 412, 414 (Me. 1982).[2] Plaintiff had the burden of showing the Commission that good cause existed. *Kilmartin,* 446 A.2d at 414.

If the only evidence before the Commission were that of the Plaintiff, it might indeed appear that Plaintiff had "good cause" to leave her employment. Changed circumstances in an employment situation that compel an employee to leave out of concern for his health may be considered good cause for resigning from employment. *Paige v. Maine Employment Security Commission,* 391 A.2d 321, 325 (Me. 1978); *Therrien v. Maine Employment Se-*curity Commission,* 370 A.2d 1385, 1390 (Me.1977).

In order, however, for changed circumstances of employment causing a deterioration in health to constitute good cause, the employer must be given an opportunity to change the offensive conditions. Hence, the employee must reasonably make known his dissatisfaction to the employer. *See Therrien,* 370 A.2d at 1390.[3] In the case before us Mrs. Skidgel was entitled to notice of the overtime and compensation problems caused by the circumstances of the Plaintiff's employment. As part of its findings, the Commission found that the Plaintiff had failed to so communicate with her employer.

On this issue the Commission heard conflicting testimony. It is not our function, however, in reviewing an administrative decision, to undertake a fresh determination of credibility. *W.S. Libbey Co. v. Maine Employment Security Commission,* 446 A.2d 42, 44 (Me.1982). The testimony of the employer in the instant case "is not so farfetched as to compel its disbelief by the administrative agency." *Id.* Significantly, Mrs. Skidgel's testimony that she had no knowledge of the Plaintiff's dissatisfaction is corroborated by the Plaintiff's letter of resignation, in which she made no mention of her problems with overtime or lack of compensation. We can thus conclude that the Commission's decision that the Plaintiff left her job without good cause attributable to such employment is supported by competent evidence.

The Plaintiff also contends that the Commission erred in not failing to develop facts at the hearing with respect to the job's effect on the Plaintiff's health and additional duties at the smaller boarding

---

**2.** Good cause exists when "The pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances *compel* the decision to leave employment...." *Toothaker v. Maine Employment Security Commission,* 217 A.2d 203, 207 (Me.1966) *quoting Krauss v. A & M Karagheusian, Inc.,* 13 N.J. 447, 100 A.2d 277, 281 (1953).

**3.** The case at bar can be readily distinguished from *Therrien,* because in that case, but not in this, the employer was fully informed on the changes in the environment that the employee regarded as posing some threat to the employee's physical or mental health.

home. We disagree. 5 M.R.S.A. § 9061 (1979)[4] does not require an agency to make detailed incident-by-incident fact finding. *Bean,* 485 A.2d at 634; *Cotton v. Maine Employment Security Commission,* 431 A.2d 637, 639 (Me.1981). Instead, that statute requires only that the agency include findings of fact sufficient to apprise parties and interested members of the public of the decision. In the case at bar the Commission concluded that Plaintiff's overtime and compensation problems (and thus, implicitly, any resultant claimed health problems) were caused by the Plaintiff's own over-zealousness and failure to communicate with her employer.

The reasons stated by the Commission meet the standard of our statute.

The entry is:

Judgment affirmed.

All concurring.

---

**4.** 5 M.R.S.A. § 9061 (1979) provides in part: Every agency decision made at the conclusion of an adjudicatory proceeding shall be in writing or stated in the record, and shall include findings of fact sufficient to apprise the parties and any interested member of the public of the basis for the decision.