Frances D. SPEAR

v.

## MAINE UNEMPLOYMENT INSURANCE COMMISSION et al.

Supreme Judicial Court of Maine.

Argued Jan. 7, 1986.

Decided Feb. 13, 1986.

Francis J. Hallissey (orally), Machias, for plaintiff.

James E. Tierney, Atty. Gen., Mary Lou Dyer (orally), Pamela W. Waite, Asst. Attys. Gen., Augusta, Drummond Woodsum Plimpton & Macmahon, Harry R. Pringle (orally), George A. Carmel, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Defendants Maine Unemployment Insurance Commission (Commission) and Maine School Administrative District No. 77 (S.A.D. 77) appeal a judgment of the Superior Court (Washington County) reversing a decision of the Commission that denied plaintiff Frances Spear unemployment in-

surance benefits on the basis that she left her employment with S.A.D. 77 voluntarily and without good cause attributable to such employment within the meaning of 26 M.R.S.A. § 1193(1)(A) (Supp.1985–1986). Mrs. Spear cross-appeals, urging that the Superior Court erred by refusing to reopen the administrative record pursuant to 5 M.R.S.A. § 11006(1) (1979).

Mrs. Spear was employed as an elementary school teacher by defendant S.A.D. 77 in the Machias area from 1966 until she resigned on June 24, 1983. At the time of her resignation she was teaching kindergarten at the Mary C. Burns School in East Machias. Mrs. Spear's supervisors had been concerned with her performance for several years before her resignation. In particular, they felt that she had trouble in covering an adequate amount of class material and in controlling her students.

During the 1981–82 school year Mrs. Spear's supervisors told her that she needed to improve her teaching skills, and Ann Fuller, S.A.D. 77's curriculum supervisor, began to work with her toward that goal. Over the summer of 1982, Mrs. Fuller asked Mrs. Spear to read 11 books on teaching in lieu of taking courses at the University of Maine. Mrs. Spear was very cooperative in her attempts to improve. During the 1982–83 school year Mrs. Fuller and Donna Beal, the school principal, from time to time sat in on Mrs. Spear's classes to monitor her improvement and make suggestions. Mrs. Fuller observed Mrs. Spear's classes some 16 times over the nine-month school year. Mrs. Spear always cooperated and never complained about the monitoring, except that one time she told Mrs. Fuller that it made her nervous. Mrs. Fuller reassured her that she need not be nervous.

By the end of the 1982–83 school year, Mrs. Spear had made improvements in her performance. In a meeting on May 26, 1983, her supervisors told her that the monitoring would not continue during the 1983–84 school year, but that Mrs. Fuller was there to give any help Mrs. Spear asked

for. On June 9, 1983, Ivan Corey, the superintendent of S.A.D. 77, sent Mrs. Spear a letter informing her that her 1983–84 teaching contract had been renewed. The contract was unconditional, which meant that Mrs. Spear was in no danger of losing her job; but it was with reservations, which meant that Mrs. Spear was made aware that she should keep improving.

Despite the offer of the 1983–84 school year teaching contract, Mrs. Spear resigned in a letter dated June 24, 1983. She gave no reasons for her resignation. Two months later she visited a doctor, complaining of anxiety and stress.

In December 1983 Mrs. Spear applied for unemployment benefits, asserting that she had left her job with good cause attributable to her employment. A deputy of the Maine Bureau of Employment Security found in her favor. After a hearing the appeal tribunal affirmed the deputy's decision. After holding a further evidentiary hearing, the Maine Unemployment Insurance Commission reversed, finding that Mrs. Spear did not resign with good cause attributable to her employment.

■ Mrs. Spear then sought review of the Commission's decision by the Superior Court pursuant to M.R.Civ.P. 80C. That court reversed the Commission's decision and ordered the Commission to grant Mrs. Spear unemployment benefits. We need not discuss the Superior Court's reasoning because the Superior Court acted in direct judicial review of the record before the Commission, and in such cases we disregard the decision of the Superior Court and review the action of the administrative agency directly. *Look v. Maine Unemployment Insurance Commission,* 502 A.2d 1033, 1034 (Me.1985); *Tompkins v. Maine Unemployment Insurance Commission,* 487 A.2d 267, 269 (Me.1985).

"When reviewing a decision of the Maine Unemployment Insurance Commission, our test is to determine whether there exists any competent evidence to support the find-

ings made by the Commission as well as to determine whether upon those findings the Commission has applied the correct law." *Merrow v. Maine Unemployment Insurance Commission*, 495 A.2d 1197, 1200 (Me.1985); *Bean v. Maine Unemployment Insurance Commission*, 485 A.2d 630, 632–33 (Me.1984). The Commission's decision may be reversed if it is "[u]nsupported by substantial evidence on the whole record." 5 M.R.S.A. § 11007(4)(C)(5) (1979). On the other hand, the Commission's decision must be upheld if there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sanford Highway Unit v. Town of Sanford*, 411 A.2d 1010, 1014 (Me. 1980).

This case is controlled by 26 M.R.S.A. § 1193(1)(A), which provides:

An individual shall be disqualified for benefits:

**1. Voluntarily leaves work.**

A. For the week in which he left his regular employment *voluntarily without good cause attributable to such employment,* ... and disqualification shall continue until claimant has earned 4 times his weekly benefit amount in employment by an employer....

26 M.R.S.A. § 1193(1)(A) (Pamph.1985) (emphasis added). Mrs. Spear had the burden of proving to the Commission that she resigned with good cause attributable to her employment. *Merrow*, 495 A.2d at 1201; *Kilmartin v. Maine Employment Security Commission*, 446 A.2d 412, 414 (Me. 1982). Good cause for voluntarily resigning exists when "[t]he pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances *compel* the decision to leave employment." *Merrow*, 495 A.2d at 1201 n. 2 (quoting *Toothaker v. Maine Employment Security Commission*, 217 A.2d 203, 207 (Me.1966) (emphasis in original)). Good cause must be measured against a standard of reasonableness under all the circumstances. *Merrow*, 495 A.2d at 1201. Thus we use an objective test to determine whether an employee has good cause to leave her employment. *See Therrien v. Maine Employment Security Commission*, 370 A.2d 1385, 1389 (Me.1977) (objective standard used to determine whether employee discharged for "misconduct" under 26 M.R.S.A. §§ 1043, 1193 because "[c]ases can be easily imagined where an employee's behavior is in fact grounded upon some sincere but irrational belief").

The Commission found that Mrs. Spear "left her position because she believed she could not physically meet the requirements of her job any longer. [She] believed she could not continue to improve her job performance. She also was nervous because her job performance had been monitored during the previous school year and she felt that this monitoring would continue into the 1983–84 school year." Nonetheless, the Commission concluded that Mrs. Spear left her employment without good cause attributable to her employment: "She was not compelled to leave her employment by outward pressures. The employer's curriculum guidelines were designed to improve the level of teaching in the classroom, not designed to force the claimant to leave her employment. The employer's actions were reasonable and do not constitute good cause for the claimant's [resignation]." In other words, Mrs. Spear left her teaching position because of subjective inward pressures rather than objective outward pressures, and those inward pressures were not reasonable under all the circumstances. Contrary to Mrs. Spear's contention on appeal, the Commission's decision is supported by "substantial evidence on the whole record." 5 M.R.S.A. § 11007(4)(C)(5) (1979).

■ From the evidence before it, the Commission was well justified in finding the following subsidiary facts: The intent of S.A.D. 77 in monitoring Mrs. Spear's performance was to improve her performance. The monitoring procedure was a normal practice for the school district, and Mrs. Spear was not unfairly singled out.

The employer's intent is relevant here because it helps to test the reasonableness of Mrs. Spear's belief that her only course of action was resignation. In the view of both Mr. Corey, the superintendent, and Mrs. Fuller, the curriculum supervisor, Mrs. Spear had improved her skills as a teacher over the time that she was monitored. She received an unconditional employment contract for the 1983–84 school year and was not in danger of losing her job. Mr. Corey and Mrs. Fuller told Mrs. Spear that no monitoring would be required during the 1983–84 school year, but that help was available at her request. Therefore, from the evidence the Commission could conclude that Mrs. Spear had every reason to keep her job and no reasonable basis for leaving it.

■ Furthermore, Mrs. Spear was very cooperative with the school district's attempts to help her and never informed her supervisors that she felt unable to conform to their expectations. While changed circumstances in an employment situation that compel an employee to leave his job out of concern for his health may be considered as good cause for resigning, "the employer must be given an opportunity to change the offensive conditions. Hence, the employee must reasonably make known his dissatisfaction to the employer." *Merrow*, 495 A.2d at 1201. In the case at bar Mrs. Spear failed to meet that requirement. In addition, she failed to demonstrate that she resigned because of health risks attributable to her employment. Mrs. Spear did not see a doctor until two months after her resignation. She testified before the Commission that when she made the doctor's appointment, "I was really upset ... because this was ... like the termination of my career, which meant a lot to me." From the evidence before the Commission, one would conclude that she visited her doctor because she was upset as a result of her resignation rather than because of stress attributable to her employment.

In conclusion, the findings of the Commission were well supported by "such relevant evidence as a reasonable mind might accept as adequate to support [its] conclusion." *Sanford Highway Unit v. Town of Sanford*, 411 A.2d at 1014. Those findings, therefore, were not clearly erroneous.

■ On cross-appeal Mrs. Spear argues that the Superior Court erred by refusing to order the reopening of the administrative record pursuant to 5 M.R.S.A. § 11006(1) (1979) to enable her to introduce in evidence a doctor's report offered to prove that she resigned for medical reasons attributable to her employment. We review that decision of the Superior Court for abuse of discretion. *Carl L. Cutler Co. v. State Purchasing Agent*, 472 A.2d 913, 919 (Me.1984). Mrs. Spear contends that at the appeal tribunal hearing she had in her possession a note from her doctor that she says supports her claim that she resigned because of a nervous condition. The hearing officer did not admit the note in evidence, and the record is unclear whether Mrs. Spear even attempted to introduce it at that time. In any event, Mrs. Spear made no attempt to introduce the note at the Commission hearing. The Commission is empowered to take additional evidence in its review of claims, 26 M.R.S.A. § 1194(5) (Pamph.1985), and in fact did so in this case. Therefore the Superior Court did not exceed its discretion by refusing to reopen the administrative record to allow Mrs. Spear to offer evidence that she could have offered to the Commission in the hearing at which she testified.

The entry is:

Judgment vacated.

Remanded to the Superior Court with instructions to enter judgment affirming the decision of the Maine Unemployment Insurance Commission.

All concurring.