STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
Docket No. AP-10-19
MGK - AND - 6/8/2011

EILEEN CROSSMAN,

Petitioner

v.                                    **DECISION AND ORDER**

UNEMPLOYMENT INSURANCE
COMMISSION, STATE OF MAINE

Defendant

Petitioner Eileen Crossman appeals from the decision of the Maine Unemployment

Insurance Commission denying her unemployment benefits, based on the Commission's

majority determination that she voluntarily left her employment without good cause attributable

to her employment.

BACKGROUND

Crossman began working for Pinetree Garden Seeds, a husband and wife co-owned mail

order and internet seed and gardening supply company, on January 31, 2008. Crossman was a

seasonal employee. Her duties included answering phone, taking and preparing orders, printing

labels, and shipping.

On January 14, 2010, the owners held a staff meeting at approximately 10:00 a.m. Prior

to the meeting Crossman approached the husband co-owner and suggested that the location of

the meeting be changed to accommodate an employee who was unable to go up the stairs to the

meeting location. The co-owner did not address this request; instead he complimented Crossman

on the cover of the company catalog that featured a painting she had created.[1] The parties then proceeded into the meeting.

During the meeting the husband co-owner stated that he was surprised there were no credit card transactions on the previous Sunday, an indication that no phone orders were taken. Crossman, who was not singled out by anyone, but who had worked on the Sunday in question, stated that the phone had not rung on that day. The husband co-owner replied that he found that hard to believe. Crossman became upset and repeatedly asked if the husband co-owner was calling her a liar. He responded by saying "I guess so." Crossman then told the husband co-owner that he owed her an apology, and that he was an "idiot." The husband co-owner did not respond.

Crossman then demanded her paycheck. The husband co-owner directed the business manager to prepare Crossman's paycheck, which, as it was a payday, would have been issued later in the day. Crossman left the room with the business manager, and the husband co-owner "waved his hands in an up and down motion and sarcastically said "bye-bye'" and continued on with the meeting. The co-owner husband never told Crossman she was fired, nor did he ask her to leave. At no point did the Crossman say she had quit.

A day or two after the incident the wife co-owner, Crossman's friend and next-door neighbor, called Crossman. Crossman did not return the call, nor any of the subsequent calls

---

[1] Crossman painted the picture in 2008, hoping that it would be used on the 2009 cover, but it was used instead on the 2010 catalog. There is a dispute between Crossman and the owners as to whether she authorized the use of the painting, and whether she was told she would be compensated for its use on the catalog cover. According to Crossman, the co-owners agreed to pay her $1,000 for the painting. She also stated that prior to the January 14, 2010 meeting the husband co-owner told her "she would be surprised," which she took to mean that she would indeed be compensated for the work. The co-owners dispute this, arguing that they may have complimented Crossman on the work, but there was no discussion of compensation. However, whether Crossman is owed compensation for the painting has little bearing on this appeal.

made by the co-owner wife to Crossman. Crossman never made any efforts to contact the employer at any time after January 14, 2010.

Crossman subsequently applied for unemployment benefits, a request that was initially granted by a deputy who determined that Crossman was discharged but not for misconduct. The employer appealed that determination to the Division of Administrative Appeals, which held hearings on April 13 and April 15, 2010. The hearing officer concluded that Crossman left her job voluntarily without good cause associated with her employment. Crossman appealed to the Unemployment Insurance Commission, which held a hearing on October 13, 2010 where it also concluded that Crossman left her work voluntarily and without good cause associated with her employment, and thus was disqualified from receiving benefits. Crossman now appeals to this court pursuant to Rule 80C.

DISCUSSION

When acting as an appellate body pursuant to M.R. Civ. P. 80C, the court directly examines the record before the agency and reviews its decision for errors of law, findings not supported "by substantial evidence on the whole record," or other indications that the decision was "[a]rbitrary or capricious or characterized by abuse of discretion." 5 M.R.S. § 11007(4)(C) (2011); *see also* 5 M.R.S. § 11006(1) (2011) ("Judicial review shall be confined to the record upon which the agency decision was based . . ."). The court generally gives "great deference to the Commission's interpretation of its own regulations." *Farley v. Maine Unemployment Ins. Comm'n*, 624 A.2d 1233, 1234 (Me. 1993).

Maine's Employment Security Law disqualifies a claimant from receiving unemployment benefits if the claimant voluntarily left regular employment "without good cause attributable to that employment." 26 M.R.S. § 1193(1)(A) (2009). Therefore, Crossman "had the burden of

3

proving to the Commission that she resigned with good cause attributable to her employment." *Spear v. Maine Unemployment Ins. Comm'n*, 505 A.2d 82, 84 (Me. 1986) (internal citations omitted). "Good cause must be measured against a standard of reasonableness under all the circumstances." *Id.* (citing *Merrow v. Maine Unemployment Ins. Comm'n*, 495 A.2d 1197, 1201 n.2 (Me. 1985). Accordingly, courts "use an objective test to determine whether an employee has good cause to leave [her] employment." *Id.* (citing *Therrien v. Maine Employment Security Comm'n*, 370 A.2d 1385, 1389 (Me. 1977) (noting that the objective standard is used because "cases can be easily imagined where an employee's behavior is in fact grounded upon some sincere but irrational belief").

In this case, the Commission found that the husband co-owner did not fire Crossman; rather Crossman left her job voluntarily. The court agrees. The evidence on the record demonstrates that the co-owner never told Crossman she was fired, but that she "freely ma[de] an affirmative choice" to leave on January 14, 2010 after demanding her paycheck that she would have received later that day. *Snell v. Maine Unemployment Ins. Comm'n*, 484 A.2d 609, 610 (Me. 1984) (internal citation and quotations omitted).

The court also agrees with the Commission's finding that Crossman did not establish that she had good cause to leave her employment. As noted by the Commission, and as demonstrated by the evidence on the record, Crossman did not take reasonable steps to communicate her frustration about the co-owner husband's remarks regarding the lack of phone calls and sales the previous Sunday. *See Spear v. Maine Unemployment Ins. Comm'n*, 505 A.2d 82, 85 (Me. 1986) (noting "'employer[s] must be given an opportunity to change the offensive conditions. Hence, the employee must reasonably make known his [or her] dissatisfaction to the employer.'") (citing *Merrow*, 495 A.2d at 1201). Additionally, the co-owner husband's comments and conduct at the

4

meeting were not such that a reasonable employee would feel "compelled" to leave his or her employment. *See Spear,* 505 A.2d at 84 ("Good cause for voluntarily resigning exists when the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances compel the decision to leave employment.") (internal citations and quotations omitted).

Although it is unfortunate that the parties were unable to effectively communicate, especially in light of the fact that they are neighbors and had been close friends, the court concludes that the Commission's findings are supported by credible evidence, and the Commission did not misapply the law in its decision that Crossman voluntarily left her employment without good cause attributable to such employment.

The entry is:

> Petitioner's appeal is denied. The decision of the Unemployment Insurance Commission is affirmed.

DATED: 6/8/11

Mary Gay Kennedy
Superior Court Justice

5

Date Filed __12-22-10__ __Androscoggin__ Docket No. __AP-10-19__
County

Action __80C Appeal__

EILEEN CROSSMAN                                    MAINE UNEMPLOYMENT COMMISSION
P.O. Box 451
Sabattus, ME   04280

vs.

| Plaintiff's Attorney | | Defendant's Attorney |
|---|---|---|
| Pro Se | | Elizabeth Wyman, Esq. Office of Attorney General 6 State House Station Augusta, ME   04333 |
| **Date of Entry** | | MARK FRANCO, ESQ. (Pinetree) PO BOX 4630 PORTLAND, ME 04112 |

| | |
|---|---|
| **2010**<br>Dec 22 | Received 12-22-10:<br>Notice of 80C Appeal filed. |
| **2011**<br>Jan 10 | Received 01-07-11:<br>Entry of Appearance of Elizabeth Wyman, Esq. for Maine Unemployment Commission filed. |
| Jan 27 | Rec'd on 1/26/11<br>Entry of Appearance of Mark Franco, Esq. on behalf of Pinetree Garden Seeds. |
| Jan 28 | Received 01-28-11:<br>Administrative Record filed. |
| "     " | On 01-28-11:<br>Notice and Briefing Schedule (80C) filed.<br>Petitioner's Brief is due on or before March 9, 2011.<br>Copies mailed to parties on 1-28-11. |
| March 9 | Rec'd on 3/8/11<br>Petitioner's Brief filed with two exhibits. |
| April 15 | Rec'd 4-13-11<br>Brief of Respondent Maine Unemployment Insurance Commission<br>s/ Elizabeth Wyman, Esq. |
| May 11 | On 05-11-11:<br>Case set for hearing on June 8, 2011 at 9:00 a.m.<br>Notice sent to parties on 5-11-11. |
| June 9 | On 06-08-11:<br>Hearing held on 80C Appeal.  Matter taken under advisement.<br>Kennedy, J., Tape 391, Index 1464-2269, Eileen Crossman, Pro se and Elizabeth Wyman, Esq. for the Defendant. |