STATE OF MAINE
KENNEBEC, SS

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP 12-42
_DHM - KEN - 7/29/2013_

GEORGIANNA HASKELL,
Petitioner

v.

DECISION

MAINE UNEMPLOYMENT
INSURANCE COMMISSION,
Respondent

Before the Court is Petitioner Georgianna Haskell's Rule 80C Petition appealing from

Decision No. 12-C-08054 of the Maine Unemployment Insurance Commission (the

"Commission") denying her request for reconsideration of Decision No. 12-C-06452. In the

latter Decision, the Commission affirmed and adopted the finding of the Administrative Hearing

Officer, which effectively disqualified Ms. Haskell from receiving benefits because she

voluntarily left regular employment without good cause attributable to that employment pursuant

to 26 M.R.S.A. §§ 1193(1) and 1221(3). Ms. Haskell appears to assert that she was forced to

leave her employment because her employer had unreasonable expectations for her performance,

and she was subject to unfair changes in her job duties. Petitioner submitted two hand-written

"briefs," which do not provide a legal basis for her appeal to this Court. Therefore, the Court

relies on the Commission's argument and on the transcript of the Unemployment Insurance

Appeals Telephonic Hearing held before the Hearing Officer assigned to the case.[1]

Ms. Haskell began working for Aetna Insurance (the "employer") as a long-term

disability claims technician in October 2009. She generally worked forty hours per week, and

received at an hourly rate of $36,000 a year. In 2011, the employer placed a new supervisor in

---

[1] Petitioner did not appear at oral argument before the Court.

1

charge of Ms. Haskell, which apparently resulted in changes in Ms. Haskell's job duties. She struggled to maintain a sufficient level of performance during this time and found the process to be "like shifting sand." Ms. Haskell stated she found this time to be "very stressful." Because Ms. Haskell was failing to meet performance expectations, the employer put her on a thirty-day performance review, and Desiree Dupuis, who worked from Tampa, Florida, supervised her. Ms. Haskell and Ms. Dupuis had weekly one-on-one phone sessions to discuss Ms. Haskell's performance, and Ms. Dupuis arranged for Ms. Haskell to be assigned a mentor for training purposes.

On February 29, 2012, Ms. Dupuis had a one-on-one meeting with Ms. Haskell to discuss the fact that her performance was still falling short of expectations, and that she would be placed on an additional thirty-day performance plan. Under the terms of that plan, at the end of the thirty days, the employer would reassess Ms. Haskell's performance, and possibly consider termination. At that point, Ms. Haskell stated that she could not maintain the level of performance expected by the employer, and asked for thirty days in order to look for other employment. Ms. Haskell states that she chose to leave because "couldn't seem to hit the mark ever," and she did not want to be terminated; she wanted to leave "holding [her] head high."

The employer gave Ms. Haskell two weeks to find other employment, as opposed to the thirty days she initially requested. Ms. Dupuis advised Ms. Haskell that she would need to receive Ms. Haskell's two week-notice of resignation in writing. Ms. Haskell then sent the employer an email on February 29, 2012, explaining, "I believe it is mutual that I am not what Aetna needs. I have given Aetna my best. I would like to have March 16th as my last day at Aetna." Ms. Haskell indicated to the Court in the letter that she would have liked to ask for a

2

letter of recommendation, but did not because she was confused about how Aetna felt towards her.

Ms. Haskell applied for benefits. The employer filed an appeal of the charge notice. On July 7, 2012, an Administrative Hearing Officer held a telephonic conference between the parties, and the Hearing Officer issued a decision finding that Ms. Haskell had left her job voluntarily without good cause attributable to her employment. Ms. Haskell then filed an appeal with the Commission, which issued a Decision affirming and adopting the Hearing Officer's decision. When Ms. Haskell requested reconsideration of the Commission, she was denied, and this appeal followed.

When acting as an appellate body pursuant to M.R. Civ. P. 80C, the Court directly examines the record the agency and reviews its decision for errors of law, findings not supported "substantial evidence on the whole record," or other indications that the decision was "[a]rbitrary or capricious or characterized by abuse of discretion." 5 M.R.S.A. § 11007(4)(C); *see also* 5 M.R.S.A. § 11006(1) ("[j]udicial review shall be confined to the record upon which the agency decision was based . . . ."). Additionally, this Court will not disturb a decision of the Commission "unless the record before the Commission compels a contrary result." *McPherson v. Maine Unemployment Ins. Comm'n,* 1998 ME 177, ¶ 6, 714 A.2d 818; *see also Gerber Dental Ctr. v. Maine Unemployment Ins. Comm'n,* 531 A.2d 1262, 1263 (Me. 1987). Whether evidence in the record is "credible" is "uniquely the Commission's province as fact-finder," and should not be disturbed on appeal. *See Cotton v. Maine Emp't Sec. Comm'n,* 431 A.2d 637, 640 (Me. 1981).

The burden of proof is on the petitioner to prove that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff v. Maine*

3

*State Ret. Sys.*, 661 A.2d 167, 170 (Me. 1995) (citation omitted); *see also Seven Islands Land Co. v. Maine Land Use Regulatory Comm'n*, 540 A.2d 475, 479 (Me. 1982). Additionally, the Court may not substitute its judgment for that of the agency simply because the evidence could give rise to more than one result. *See Dodd v. Sec'y of State*, 526 A.2d 583, 584 (Me. 1987); *Gulick*, 452 A.2d at 1209.

Before addressing the issue of leaving employment for good cause attributable to the employer, the Court notes that there is no dispute regarding whether Ms. Haskell left her regular employment voluntarily. In *Brousseau v. Maine Emp't Sec. Comm'n*, the Law Court found that because the term "voluntarily" is not defined in the Employment Security Act, words in the statute "should be construed according to their natural import." 470 A.2d 327, 330 (Me. 1984). "Therefore, in the context of 26 M.R.S.A. § 1193(1)(A), an individual leaves work 'voluntarily' only when freely making an affirmative choice to do so." *Id.*

Here, Ms. Haskell chose to leave her job solely of her own accord; the employer neither pressured Ms. Haskell into leaving, nor did it fire her. In *Spear v. Maine Unemployment Ins. Comm'n*, the Law Court found that the claimant, a schoolteacher, chose not to continue her job because she was nervous that her performance had been monitored during the previous school year. *See* 505 A.2d 82, 84 (Me. 1986). The claimant opted to leave her job, but the court concluded that she "left her teaching position because of subjective inward pressures rather than objective outward pressures, and those inward pressures were not reasonable under the circumstances." *Id.* In the instant matter, Ms. Haskell chose to leave her job under similar circumstances. The stress and pressure she felt appears to have come from within her, and the Court cannot reasonably conclude that the employer exerted unreasonable pressures on Ms. Haskell to improve her job performance. *See Snell v. Maine Unemployment Ins. Comm'n*, 505

4

A.2d 82, 84 (Me. 1986) (finding that personal reasons, even when compelling, cannot constitute good cause attributable to one's employment).

The Commission was charged with deciding whether Ms. Haskell had good cause within the meaning of § 1193(1)(A) to leave her employment. Maine's Employment Security Law disqualifies a claimant from receiving unemployment benefits if the claimant voluntarily left regular employment "without good cause attributable to that employment." 26 M.R.S.A. § 1193(1)(A). This means that Ms. Haskell "had the burden of proving to the Commission that she resigned with good cause attributable to her employment." *Spear*, 505 A.2d at 84 (internal citations omitted). "Good cause must be measured against a standard of reasonableness under all the circumstances." *Id.* (*citing Merrow v. Maine Unemployment Ins. Comm'n*, 495 A.2d 1197, 1201 (Me. 1985)). The Court uses an objective test to determine whether Ms. Haskell had good cause to leave her employment. *See id.*; *Therrien v. Maine Emp't Sec. Comm'n*, 370 A.2d 1385, 1389 (Me. 1977) (finding that if measuring the employee's subjective belief is determinative, "[s]incerity of belief is too subjective a concept to serve satisfactorily as the sole basis for determining a discharged employee's status under the statute.").

Ms. Haskell chose to leave her job after several months of struggling to improve her performance. The employer recognized her struggles, and adopted a plan to help her improve by providing additional training and regular feedback. Ms. Haskell left her job based on her own belief that she was unable to meet the employer's expectations.

The Commission, in its Brief, correctly points out the similarities between this case and *Spear*. In *Spear*, the claimant-schoolteacher had been placed under close monitoring in order to elicit improvement. *See Spear*, 505 A.2d at 83. Even though she was offered an unconditional contract for the following year, and was in no danger of losing her job, the claimant resigned by

5

letter. *See id.* The claimant applied for unemployment benefits, and asserted that she had left her job with good cause attributable to her employment. *See id.* The Law Court found that the employer's conduct was reasonable, and that the choice to resign was entirely voluntary. *See id.* To gauge whether the employer played a role in the claimant's decision to resign, the Law Court looked closely at the employer's intent in monitoring the claimant because "it helps to test the reasonableness of [the claimant]'s belief that her only course of action was resignation." *Id.*

Applying this inquiry to Ms. Haskell's situation, Ms. Dupuis stated to the Hearing Officer that Ms. Haskell was having performance issues on the job, and that is why she became subject to a thirty-day performance review period. That Ms. Haskell failed to sufficiently improve, despite the one-on-one assessments conducted by Ms. Dupuis and mentoring provided by the employer, provided reasonable cause for the employer to conclude that Ms. Haskell required another thirty-day assessment period. Additionally, the employer's plan was reasonable in light of its expectations that at the end of the assessment period, a reevaluation of the plan would be considered, or termination would potentially result. Ms. Haskell was constantly aware of the employer's reasons for assessing her job performance. That Ms. Haskell, at the end of the first thirty-day period, chose to give her two-week notice does not indicate that she was in danger of losing her job. Therefore, as in *Spear*, Ms. Haskell "had every reason to keep her job and no reasonable basis for leaving it." *Spear*, 505 A.2d at 85. The potential for a consideration of termination of her employment is not construed as a threat but only as an honest communication of the employer's position regarding Ms. Haskell's performance to date.

Ms. Haskell stated that when she was informed she would be going through another thirty-day probation period, she was stressed, and believed she could not continue. However, Ms. Haskell did not seek medical care in order to address the stress, and did not suffer from any

6

physical consequences. At most, it appears that Ms. Haskell was distressed by the situation, but not enough to say that any condition generated by the employer caused her either mental or physical injury. In *Merrow*, the Law Court held that "[c]hanged circumstances in an employment situation that compel an employee to leave out of concern for his health may be considered good cause for resigning from employment." 495 A.2d at 1201. Such a scenario is not presented here.

The court in *Merrow* also held that "for changed circumstances of employment causing a deterioration in health to constitute good cause, the employer must be given an opportunity to change the offensive conditions." *Id.* No such opportunity was provided here—the employee did not make known to her supervisor her dissatisfaction, and she did not report any health issues at all. Based on this, the Court concludes that Ms. Haskell's decision to end her employment was entirely voluntary and her employer neither applied an unduly harsh probation period resulting in physical or mental injury nor induced Ms. Haskell to quit in any other way.

For the reasons stated herein, the entry will be:

The Petition for judicial review is DISMISSED.

The clerk may docket by reference.

Dated: July 29, 2013

JUSTICE, SUPERIOR COURT

7

Date Filed     10/10/12          Kennebec          Docket No. AP-12-42          **F**
                                 County

Action:  Petition for Review          **J. Marden**
              80C


Georgianna Haskell                VS.          Unemployment Insurance Commission

Plaintiff's Attorney                           Defendant's Attorney

Georgianna Haskell - Pro Se                    Elizabeth Wyman, AAG
101 Ross Road                                  6 State House Station
Kennebunk, ME  04043                           Augusta, Maine 04333-0006


Date of Entry

| | |
|---|---|
| 10/10/12 | Petition For Review, filed.  s/Haskell, Pro Se |
| 10/22/12 | Letter entering appearance, filed.s/Wyman, AAG |
| 11/13/12 | Administrative Record, filed. s/Wyman, AAG |
| 11/15/12 | Notice and Briefing Schedule issued:<br>Copies to party/atty. |
| 12/11/12 | Petitioner's Brief, filed. s/Haskell, Pro Se |
| 1/9/13 | Brief of Respondent Maine Unemployment Insurance Commission, filed.<br>s/Wyman, AAG |
| 7/9/13 | Oral argument scheduled for July 24, 2013 at 10:30.<br>Notice to Petitioner and AAG Wyman |
| 7/30/13 | Notice of Hearing returned from Petitioner on 7/25/13 as undeliverable, no forwarding address. |
| 7/30/13 | Oral argument not held on 7/24/13.<br>J. Marden, presiding.  Elizabeth Wyman, AAG for Respondent.  No appearance by Petitioner.<br>Tape 1737, Index 2911-2965<br>Under advisement. |
| 7/30/13 | DECISION, Marden, J.  (7/29/13)<br>The Petition for judicial review is DISMISSED.<br>Copy to Petitioner and AAG Wyman.<br>Copy to repositories. |
| 7/30/13 | Notice of removal of Record mailed to AAG Wyman. |