HASCO MANUFACTURING CO.
*vs.*
MAINE EMPLOYMENT SECURITY COMMISSION

Cumberland.    Opinion, November 15, 1962.

*Walter E. Foss, Jr.,* for the Plaintiff.
*Frank A. Farrington,*
*Milton L. Bradford, Asst. Attys. Gen. Employment*
*Security Commission,* for the Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WILLIAMSON, C. J.   This case arising under the Maine Employment Security Law is before us on appeal from the decision of the Superior Court sustaining on review the action of the Employment Security Commission.   R. S., c. 29, § 5, XIV.   The issue is whether the services of certain individuals selling products of the appellant Hasco Manufacturing Company (for convenience herein called "Hasco") constituted "employment" under the statute.   If so, the individuals were "employees," and not dealers or independent contractors as contended by Hasco, and their earnings were subject to contribution to the unemployment compensation fund.

Three points of appeal are designated; namely, that the decision is (1) against the law, (2) against the evidence, and (3) manifestly against the weight of the evidence.   We are not concerned with points (2) and (3), which are applicable in the review of a jury verdict.   In the instant case the findings of the court are "not to be set aside unless clearly erroneous."   Maine Rules Civil Procedure, Rule 52 (a).   Under point (1) we have before us the application of the statute properly construed to the facts found within the "clearly erroneous" test.

The pertinent provisions of the Employment Security Law (R. S., c. 29) are:

"Sec. 3, XIX.

" 'Wages' means all remuneration for personal services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash."

"Sec. 3, XI, E, (commonly known as the 'ABC' test.)

"Services performed by an individual for remuner-

ation shall be deemed to be employment subject to the provisions of this chapter unless and until it is shown to the satisfaction of the commission that:

"1. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"2. Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"3. Such individual is customarily engaged in an independently established trade, occupation, profession or business."

The burden rested upon Hasco to establish exemption by meeting the conditions in (1), (2), and (3) of paragraph E. It is well established that the *three conditions* must be met. To satisfy one or two, and not all three, leaves the relationship for purposes of the Act one of "employment." *Schomp, et al.* v. *Fuller Brush Co.*, 124 N. J. L. 487, 12 A. (2nd) 702; aff. 126 N. J. L. 368, 19 A. (2nd) 780; *Ross* v. *Cummins* (Ill.), 131 N. E. (2nd) 521; *State* v. *Stevens* (Vt.), 77 A. (2nd) 844.

The common law rules relating to master and servant do not govern the meaning of the statutes. As the Vermont Court said, in construing like provisions:

"Unlike some of the unemployment statutes that may have been adopted in other states our statute contains no mention of the terms 'master,' 'servant' or 'independent contractor.' It is plain from its terms that the three concomitant conditions bring under the definition of 'employment' many relationships outside of the common law concepts of the relationship of master and servant."

*State* v. *Stevens, supra,* at p. 847.

The findings of the presiding justice in the Superior Court set forth below are fully supported by evidence.

"A fair appraisal of the contentions when reduced to a simple narrative reveals the appellant to be corporation engaged in the fabrication of aluminum products in the form of windows, doors, storm sash, combination ·windows and garages. At its headquarters in Westbrook, Maine the company maintains its general business office and a product display area; there, prospective customers may examine products and make contact with salesmen, directly or by reference from the company management or clerical employees; telephone service is maintained; also it is about these products that Hasco conducts its institutionalized advertising program.

"The services of 'employees' as found by the 'Commission' are acquired by management upon the application of an individual desiring to sell Hasco products. No formal application for such service is made. No written contract for service is engaged in by the Company with a prospective seller of its merchandise; no formal training course is provided new salesmen, though the neophyte is given an opportunity for assistance in following 'a couple leads to give . . . the idea' . . . to 'show . . . how it is ·done, and you catch on in this manner.' When on his own, the salesman armed with sample kit, business cards, price list, contract of sale, (changed November 6, 1958) with or without leads he commences his canvass without limitations as to area, number of contact or minimum number of sales. A 'closing' achieved, the purchase order is presented to Hasco, here it may be accepted or rejected. If approved, cash is accepted therewith, or if financed, it is processed at a financial institution, providing credit security is sanctioned. When a 'sale' is paid for in cash or if financed successfully, salesman receives 'commission' inclusive of expenses accountable as the difference in Hasco price list, cost and contract sale order price. Installation and costs thereof borne by Hasco is pro-

vided for in sales order, unless otherwise stated. Title to fixtures remains in Hasco on terms specified in 'Contract of Sale', or 'Purchase Order' form. A sales tax is paid by purchaser to appellant. Customer complaints are referred to salesman who serviced purchase. Fixtures improperly measured or rejected by purchaser are charged against commissions of salesman involved. For sale leads company 'floor space' is made available to salesmen based on volume of sales without charge. Hasco does not require activity reports of salesmen; nor does it sponsor regular sales meetings. Occasional sales contests are promoted by Hasco, with awards given to the most successful salesmen."

The contract of sale used until November 6, 1958, was headed 'Contract of Sale — Hasco Manufacturing Company" and called for signatures of the purchaser and the salesman and acceptance by Hasco. There was nothing whatsoever in the "contract of sale" to indicate that the "salesman" was a dealer or an independent contractor.

On November 6, 1958, Hasco replaced the "Contract of Sale — Hasco Manufacturing Company" with a form headed "Purchase Order" and directed to "you (meaning the individual whose status is in issue) or your assignee." The order requires the signatures of the purchaser and the dealer. The name "Hasco Manufacturing Company" does not appear thereon. In terms the purchaser orders windows of an unknown make from "you or your assignee." The presiding justice well said, "It (the purchase order) is adroitly drawn to suggest a different relation, but the difference is a semblance only." Indeed, it is no more than a subterfuge designed unsuccessfully to escape the "salesman" of the "contract of sale."

The facts so found fail to require as a matter of law an ultimate finding that the three conditions in Sec. 3, XI, were shown "to the satisfaction of the commission."

Control contemplated by the statute is general control and the right to control may be sufficient even though it is not exercised. *Ross* v. *Cummins, supra*. The court was not compelled blindly to accept the weight given to the facts by Hasco. Taken in their entirety with the reasonable inferences to be drawn therefrom, the facts justified a finding of control within the meaning of clause (1). It is not surprising that on the "contract of sale" the seller of Hasco's product bore the descriptive and revealing designation of "salesman."

Under clause (2), admittedly the services were within and not outside the usual course of business. Accordingly the first of the alternative conditions was not met. We need consider only whether the services were performed "outside of all the places of business of (Hasco)."

Of controlling significance, in our view, on this point was the availability of "floor space" or "floor time" to the salesman (or "dealer" in Hasco's words) at the Hasco showroom. The man on the "floor" was engaged in performing the services under examination. He was a Hasco salesman selling Hasco products at the Hasco place of business with obviously increased opportunities of acquiring "leads" to other sales.

The presiding justice in his opinion said, "Place of business extends to where sales are made." We are not prepared to accept a finding under the circumstances here disclosed that Hasco's place of business included, let us say, the customer's home where the individual whose status is in issue made a sale. It is unnecessary in light of the use and availability of use of the showroom that we determine whether Hasco had a place of business elsewhere.

Lastly, under clause (3) the evidence failed to establish that the individuals were "customarily engaged in an independently established trade, occupation, profession or busi-

ness." We do not have here the barber, the baker, the plumber, the doctor, the lawyer, or a man with an independent calling. To say that the individual selling Hasco products had a proprietary interest in an occupation or business to the extent that he could operate without hindrance from any source stretches the relationship between Hasco and the individual beyond recognition. See *Murphy* v. *Daumit,* 387 Ill. 406, 56 N. E. (2nd) 800.

As we pointed out earlier, we are dealing with "employment" under the statute and not master and servant, or of independent contractor at common law. In construing the Employment Security Law, we have in mind the broad objectives in the statement of policy as follows:

"**Sec. 1. Statement of policy.** — Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which may fall upon the unemployed worker, his family and the entire community. The achievement of social security requires protection against this greatest hazard of our economic life."

The entry will be

*Appeal denied.*