Bill J. BROUSSEAU

v.

MAINE EMPLOYMENT SECURITY
COMMISSION et al.

Supreme Judicial Court of Maine.

Argued Nov. 23, 1983.

Decided Jan. 9, 1984.

Thomas P. Downing Jr. (orally), Portland, for plaintiff.

James E. Tierney, Atty. Gen., Peter J. Brann (orally), Asst. Atty. Gen., Maine Employment Sec. Com'n, Augusta, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

The defendant, the Maine Employment Security Commission (Commission), appeals from a judgment of the Superior Court, Cumberland County, reversing the Commission's determination that Bill J. Brousseau left his employment voluntarily within the meaning of 26 M.R.S.A. § 1193(1)(A) (Supp. 1982–1983).[1] We affirm the judgment of the Superior Court.

Bill J. Brousseau was discharged from his job as a truck driver and warehouseman with Red Barn Furniture Stores, Inc., on January 23, 1982, because his driver's license had been suspended as a result of a conviction for operating under the influence of intoxicating liquor in violation of 29 M.R.S.A. § 1312–B (Supp.1982–1983). A deputy of the Commission, finding that Brousseau left his regular employment voluntarily without good cause attributable to such employment, 26 M.R.S.A. § 1193(1), temporarily disqualified Brousseau from receiving unemployment benefits. The appeal tribunal affirmed the deputy's decision, and Brousseau appealed to the Commission. The notice of the Commission hearing indicated that the Commission would consider two issues: whether Brousseau left his regular employment voluntarily without good cause attributable to such employment, and whether Brousseau was discharged for misconduct connected with work, 26 M.R.S.A. § 1193(2) (Supp.1982–1983).[2]

Having considered only the voluntary quit issue, the Commission affirmed the decision of the appeal tribunal.[3] The Commission reasoned:

[O]ne of the claimant's job responsibilities was to drive the company truck making deliveries and picking up merchandise at a local warehouse. When he lost his license he was unable to carry out these duties. Claimant's acts, which resulted in the loss of his license constituted a constructive resignation from his job. Therefore, his conduct was tantamount to a voluntary leaving of his employment and he became separated from the new employment for good cause attributable to employment with the new employing unit.

---

1. 26 M.R.S.A. § 1193(1)(A) provides in pertinent part:

   [An individual shall be disqualified from benefits] [f]or the week in which he left his regular employment voluntarily without good cause attributable to such employment, or to a claimant who has voluntarily removed himself from the labor market where presently employed to an area where employment opportunity is less frequent, if so found by the deputy, and disqualification shall continue until claimant has earned 4 times his weekly benefit amount in employment by an employer; provided no disqualification shall be imposed if the individual establishes that he left employment in good faith and accepted new employment on a permanent full-time basis

2. 26 M.R.S.A. § 1193(2) provides in pertinent part:

   [An individual shall be disqualified for benefits] [f]or the week in which he has been discharged for misconduct connected with his work, if so found by the deputy, and disqualification shall continue until claimant has earned 4 times his weekly benefit amount in employment by an employer.

3. One of the three Commission members dissented without opinion.

without good cause attributable to such employment.

Brousseau petitioned the Superior Court for review.

The sole issue presented to the Superior Court for review was whether Brousseau had voluntarily left his employment within the meaning of 26 M.R.S.A. § 1193(1)(A) and was thus ineligible for benefits. Reversing the Commission's decision, the court stated:

The statute appears clear that it is the intentional act of *leaving employment,* rather than the deliberate commission of an antecedent act, which determines eligibility for benefits.

There is nothing in this record to justify a conclusion that the plaintiff's decision to drink and drive was in any way motivated by a desire to terminate his employment.

(emphasis in original). The Superior Court remanded the case for "further proceedings consistent with this opinion." The Commission now seeks review of that reversal, arguing that the Superior Court erred in holding that 26 M.R.S.A. § 1193(1)(A) did not apply to Mr. Brousseau's conduct.

### I.

█ Before reaching the merits of the Commission's argument, we must initially determine whether the decision of the Superior Court reversing the Commission and remanding the case for further proceedings constituted a final judgment for purposes of appeal.[4] If, as the Commission asserts, the Superior Court remand order authorized the Commission to consider misconduct connected with work as an alternative ground to support its earlier decision, the Superior Court judgment might be viewed as nonfinal under our decision in *Harris Baking Co. v. Maine Employment Security Commission,* 457 A.2d 427 (Me.1983). We find that the remand order did not authorize the Commission to consider a different substantive

ground for its disqualification of Brousseau. Discharge for misconduct was not raised in the Superior Court as an alternative ground for supporting the Commission's denial of unemployment benefits. *Cf. State ex rel. Tierney v. Ford Motor Co.,* 436 A.2d 866, 870 (Me.1981) (sound appellate procedure requires reviewing court to refrain from ruling upon issues not raised before it). Accordingly, the remand for "further proceedings consistent with this opinion" cannot be construed to authorize the Commission to consider a different substantive basis for its decision. The sole purpose of the remand was to allow the Commission to determine the amount of benefits to be paid to Brousseau. This action did not deprive the Superior Court's judgment of finality. *See Zillert v. Zillert,* 395 A.2d 1152, 1153–54 n. 2 (Me.1978).

### II.

█ We now consider the merits of the Commission's appeal. When reviewing a decision of the Employment Security Commission, we examine the record not only to determine whether there exists competent evidence to support the Commission's findings, but also to determine whether the Commission has correctly applied controlling law. *See Hasco Manufacturing Co. v. Maine Employment Security Commission,* 158 Me. 413, 185 A.2d 442 (1962); *Dubois v. Maine Employment Security Commission,* 150 Me. 494, 114 A.2d 359 (1955). In doing so, it is critical that we keep in mind the purposes of the Employment Security Act. The remedial nature of the statute dictates a liberal construction in favor of the employee. *See* 26 M.R.S.A. § 1042 (articulating policy behind unemployment compensation legislation). Any disqualification, being penal in nature, must be strictly reviewed. *Tobin v. Maine Employment Security Commission,* 420 A.2d 222, 225–26 (Me.1980).

---

4. By order of the court, the parties filed supplemental briefs on this issue and addressed it at oral argument.

Pursuant to 26 M.R.S.A. § 1193 (Supp.1982–1983), an individual shall be disqualified from receiving unemployment benefits if he "left his regular employment voluntarily without good cause attributable to such employment."[5] The term "voluntarily" is not defined in the Act, nor is there any reference to the doctrine of "constructive voluntary quit" or "constructive resignation." Words which are not expressly defined in the applicable statute must be accorded their plain and common meaning and should be construed according to their natural import. *Goodine v. State,* 468 A.2d 1002, 1004 (Me.1983); *Town of Arundel v. Swain,* 374 A.2d 317, 320 (Me.1977). Therefore, in the context of 26 M.R.S.A. § 1193(1)(A), an individual leaves work "voluntarily" only when freely making an affirmative choice to do so.[6] The clear import of the statute is that it is the intentional act of leaving employment rather than the deliberate commission of an antecedent act which disqualifies an individual from eligibility for benefits. To read the doctrine of constructive voluntary quit or constructive resignation into section 1193(1)(A) is to overstep the bounds of administrative construction and usurp the legislative function. *Cf. Goodine,* 468 A.2d at 1004.

The entry is:

Judgment affirmed.

All concurring.

---

**5.** The statute lists seven other specific instances in which an individual is disqualified from receiving unemployment benefits. "Misconduct" connected with work is one such ground. 26 M.R.S.A. § 1043(11)(G)(23) defines misconduct as follows:

'Misconduct' means conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has a right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

*Id.; see Cook v. Iowa Department of Job Service,* 299 N.W.2d 698, 701–02 (Iowa 1980) (discharge of claimant-truck driver because of repeated traffic violations that rendered him uninsurable held discharge for misconduct); *see also Sheink v. Maine Department of Manpower Affairs,* 423 A.2d 519, 522 (Me.1980) (in determining whether employee's behavior constitutes "misconduct," Commission must apply objective standard of unreasonableness); *Moore v. Maine Department of Manpower Affairs,* 388 A.2d 516, 519 (Me.1978) (discussing objective misconduct standard). We express no opinion in regard to whether Brousseau's conduct constituted misconduct within the meaning of the above provision.

**6.** Webster's Third New International Dictionary (1971) defines "voluntarily" as an act done of one's own free will. *Id.* at 2564.