VECTOR MARKETING CORPORATION

v.

MAINE UNEMPLOYMENT
INSURANCE COMMISSION.

Supreme Judicial Court of Maine.

Argued June 17, 1992.
Decided July 16, 1992.

Dennis R. Newman (orally), Isaac, Brant, Eldman & Becker, Columbus, Ohio, George Isaacson, Brann & Isaacson, Lewiston, for plaintiff.

Gwendolyn D. Thomas (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

CLIFFORD, Justice.

Vector Marketing Corporation (Vector) appeals from the affirmance by the Superior Court (Cumberland County, *Brennan, J.*) of a decision by the Maine Unemployment Insurance Commission (Commission) that the relationship between Vector and certain district managers and salespeople in Maine constitutes employment within the meaning of 26 M.R.S.A. § 1043(11)(E) (1988), and that Vector is required, therefore, to make contributions to the unemployment compensation fund on account of such persons. Finding no error, we affirm the Superior Court.

Vector, a Pennsylvania corporation with its national administrative headquarters in Olean, New York, is engaged in the sale of cutlery across the country though the services of what it refers to as independent contractors. Sales representatives, recruited through newspaper advertisements, work on a commission basis and sell Vector products door-to-door or by word of mouth. Orders are taken on forms purchased from Vector and the sales representatives use price lists provided by Vector. Sales representatives have no authority to accept or reject orders and receive a commission on sales only if the customer retains the merchandise.

Sale of cutlery products marketed by Vector began in Maine when Daniel St. Cyr opened an office in Portland in May of 1989. St. Cyr was a salesperson of Vector products while a student in Massachusetts before coming to Maine to open up a new sales district as a district manager. A district manager, in addition to selling Vector products, recruits and trains others to sell Vector products.[1] Like sales representatives, district managers have no authority to approve sales orders, collect accounts receivable, or authorize customer credit. The Portland office was leased in St. Cyr's name and St. Cyr received no reimbursement from Vector for any office expenses, including secretarial salaries. St. Cyr's business phone was listed as

---

[1] District managers earn a percentage commission on sales made by those sales representative that they recruited. There is no contract between district managers and sales representatives but rather each has a separate contract with Vector.

"Vector Marketing," and his receptionist was instructed to answer the telephone as "Vector Marketing." The sign on the office door said "Vector Marketing" and St. Cyr's business cards were imprinted with the name "Vector Marketing." St. Cyr's business checks were similarly imprinted, "Daniel J. St. Cyr, dba Vector Marketing."

The instant case originated in December 1989 when the Maine Bureau of Employment Security was alerted to the fact that two of St. Cyr's former secretaries filed claims for unemployment benefits identifying Vector Marketing and St. Cyr as their employer.[2] The Bureau conducted an investigation and determined that Vector was an employer in the State of Maine and, therefore, liable for Maine unemployment taxes. Vector appealed the Bureau's decision arguing that it is not an employer because it engages only the services of independent contractors. An evidentiary hearing was held before the Unemployment Insurance Commission for the purpose of determining "whether the services performed for or in connection with the business of the employing unit [Vector] constitutes employment within the meaning of 26 M.R.S.A. § 1043(11)(E)(1)–(3)." The Commission upheld the Bureau's decision and concluded that the relationship between Vector and the district managers and sales representatives constitutes employment within the meaning of the statute. Pursuant to 5 M.R.S.A. §§ 11001–11007 (1989) and M.R.Civ.P. 80C, Vector sought review of the administrative decision. The Superior Court affirmed the Commission's order, and Vector appealed to this court.

When, as in this case, the Superior Court sits as an intermediate appellate court and reviews an agency decision, we review the administrative tribunal's decision directly. *E.g., Nyer v. Maine Unemployment Ins. Comm'n*, 601 A.2d 626, 627 (Me.1992); *Gerber Dental Ctr. v. Maine Unemployment Ins. Comm'n*, 531 A.2d

1262, 1263 (Me.1987). That review is limited to whether the Commission's factual findings are supported by any competent evidence and whether the Commission correctly applied the law to the facts of the case. *Nyer*, 601 A.2d at 627; *Gerber Dental Ctr.*, 531 A.2d at 1263.

The statement of policy set forth in Maine's Employment Security Law notes that "[e]conomic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this State." In order to further its purpose of "limiting the serious social consequences of unemployment," *id.*, the statute defines employment in terms so broad as to include presumptively any "[s]ervices performed by an individual for remuneration." 26 M.R.S.A. § 1043(11)(E); *Gerber Dental Ctr.*, 531 A.2d at 1263.

Section 1043(11)(E) provides in full:

Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the bureau that:

(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

(2) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(3) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

The presumption of employment provided by this section may be rebutted by the "employing unit" only on proof of *all three* parts of what is commonly known as the "ABC" test.[3] *Nyer*, 601 A.2d at 627; *Has-*

---

**2.** The secretaries were determined to be employees of St. Cyr, not Vector, for purposes of 26 M.R.S.A. § 1043.

**3.** Common law notions of "master," "servant," and "independent contractor" do not control the

analysis under 26 M.R.S.A. § 1043(11)(E). *Hasco Mfg. Co. v. Maine Employment Sec. Comm'n,*

*co Mfg. Co. v. Maine Employment Sec. Comm'n,* 158 Me. 413, 414–15, 185 A.2d 442 (1962). The Commission found that Vector failed to prove any part of the ABC test. Since Vector had the burden of proof and persuasion before the Commission, in order to prevail on appeal. Vector must show that the record before the Commission compelled a decision contrary to the one that the Commission reached. *Nyer,* 601 A.2d at 627; *Gerber Dental Ctr.,* 531 A.2d at 1263.

■ We first look at part C of the ABC test. To meet its burden on this third element of the test, it was incumbent on Vector to demonstrate that the sales representatives and district managers have a "proprietary interest in an occupation or business to the extent that [they] could operate without hindrance from any source." *Nyer,* 601 A.2d at 627–28 (quoting *Hasco Mfg.,* 158 Me. at 419, 185 A.2d 442). The administrative record supports the Commission's conclusion that Vector failed to show that its sales representatives and district managers were independent business people. Vector's first district manager in Maine, Daniel St. Cyr, did not hold himself out as an independent businessperson. Indeed, the record shows that he identified himself very closely with Vector. Further, as a district manager, St. Cyr was prohibited from selling competing products during the term of his contract and for one year thereafter. Moreover, there was no evidence that any sales representatives sold any products other than Vector's.

Vector contends that the "sale" of St. Cyr's "business" to Karen Lanoix, another district manager, shows that district managers have a proprietary interest in their own business. Our review of the record shows that the Commission did not err in concluding that the transaction that took place between St. Cyr and Lanoix was nothing more than an assignment of a lease and the sale of some office equipment and supplies. We find no clear error in the Commission's conclusion that the sales representatives and district managers could not operate without hindrance from Vector, and that Vector failed in its burden to satisfy part C of the ABC test.[4]

The Commission found that Vector also failed to satisfy parts A and B of the ABC test. Having determined that the Commission was justified in concluding as it did as to the third part, however, we need not undertake any further review. The ABC test is conjunctive and the satisfaction of "one or two, and not all three [elements], leaves the relationship for the purposes of the Act one of 'employment.'" *Hasco Mfg.,* 158 Me. at 415, 185 A.2d 442; *see Gerber Dental Ctr.,* 531 A.2d at 1264.

The entry is:

Judgment affirmed.

All concurring.

---

158 Me. 413, 415, 185 A.2d 442 (1962). The statute is not intended to be a codification of common law employment principles. "It is plain from its terms that the three concomitant conditions bring under the definition of 'employment' many relationships outside of the common law concepts of the relationship of master and servant." *Hasco Mfg.,* 158 Me. at 415, 185 A.2d 442 (quoting *State v. Stevens,* 116 Vt. 394, 77 A.2d 844, 847 (1951) (construing similar statute)).

**4.** Vector cites a number of cases from other jurisdictions in support of its position that sales representatives and district managers are independent business people free from Vector's control. Each of these cases, however, is readily distinguishable from the facts of the instant matter and all are, therefore, less than persuasive.