STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, SS.                                     CIVIL ACTION
                                                  DOCKET NO. AP 15-13

MICHAEL MILLS,
       Petitioner

       v.                          ORDER

MAINE UNEMPLOYMENT
INSURANCE COMMISSION,
       Respondent

Petitioner Michael J. Mills has filed a M.R. Civ. P. 80C appeal from the decision of the State of Maine Unemployment Insurance Commission ("Commission") denying Petitioner unemployment benefits because he left regular employment voluntarily without good cause attributable to that employment within the meaning of 26 M.R.S. § 1193(1). For the reasons discussed below, the Court affirms the Commission's Decision and denies Petitioner's appeal.

Petitioner worked for the employer, Tel-Power, Inc., from April 10, 2014 until August 13, 2014. Petitioner earned $14.09 per hour. When Petitioner began his employment he did not have a vehicle. As a result, he used a taxi to commute to work at a daily cost of $60, or stayed in a hotel near his place of work. In or around the beginning of May, Petitioner's supervisor, Jason Bottenfield, offered Petitioner the use of a company pickup truck to commute to and from work. Generally, employees are allowed to use company vehicles to go to job sites, but are not allowed to use them to commute to work.

At some point, Petitioner's supervisor observed him using the truck for personal use after work hours. The supervisor reminded Petitioner that the truck

1

was only to be used to commute to work. In June or July, the transmission broke on the truck. Thereafter, the supervisor let Petitioner use a second pick-up truck to commute to work.

The supervisor had informed Petitioner that it would be best if he could get a vehicle soon so that he didn't have to keep using the company's truck. Meanwhile, another employee at Tel-Power complained about Petitioner's use of the company truck because he or she had worked there longer and was not offered a similar arrangement

After approximately six or seven weeks of using the company's truck to commute to work, Petitioner's supervisor decided that enough was enough and Petitioner could not use the truck anymore for said purposes. The supervisor explained that this decision was influenced by the fact that he had seen Petitioner driving the truck for personal use after work hours and his perception that Petitioner was, to some extent, taking advantage of the situation.

On August 13, 2013, the second pick-up truck loaned to Petitioner would not start. Petitioner informed the supervisor of this and the supervisor, as well as the employee who complained about Petitioner's use of the truck, came to look at the vehicle. The supervisor and other employee got the truck running again and left with it later that afternoon

Petitioner contends the supervisor told him they were all set and, later that day, sent him a text message saying that because Petitioner did not have a way to get back and forth to work, he had to let Petitioner go.

2

The supervisor testified that when he picked the truck up on August 13, 2014, he told Petitioner that he needed to remove his stuff from the truck. The supervisor also testified that he had more work for Petitioner if Petitioner "could have provided himself a way back and forth to work[.]"The supervisor explained that he could no longer provide Petitioner use of a company vehicle to commute to work. He also testified that he may have texted Petitioner back and forth about the matter. The supervisor then noted that Petitioner never clarified that he would take care of finding a way to get to work or that he would, and could, continue to work. Instead, Petitioner allegedly did not say much of anything following the breakdown of the second pick-up truck.

At the hearing, Petitioner stated that he did not have any questions for the supervisor, but also reiterated that he had made clear to the supervisor that he would have continued working for the employer if he could have found a way to get to the shop.

The Bureau of Unemployment Compensation, by Deputy Decision No. 4, found that Petitioner was discharged for misconduct after he failed to appear for work when the employer took away his company truck. Petitioner appealed that decision and the Hearing Officer modified the Deputy Decision, finding that Petitioner left employment voluntarily without good cause attributable to the employment. Specifically, the Hearing Officer explained that the Petitioner could have made other arrangements to get to work once the second company vehicle was taken away from him. Petitioner's failure to make such arrangements, such as his earlier use of hotels or taxicabs, constituted an affirmative, voluntary choice to leave

3

his employment. The Hearing Officer further explained that Petitioner did not leave his employment for good cause because Petitioner only left due to transportation difficulties. He wrote that Petitioner was advised to keep working on arranging his own transportation and to not use the company vehicle for personal use. But for Petitioner's use of the vehicle for personal use, on at least one occasion, the Hearing Officer found that the supervisor may have worked with Petitioner to arrange alternate transportation. Therefore, the Hearing Officer found that the employer's abrupt removal of the vehicle from Petitioner did not amount to good cause for Petitioner leaving the employment and disqualified him from receiving benefits pursuant to 26 M.R.S. § 1193(1)(A). The Hearing Officer also found that the employer's experience rating record was not chargeable within the meaning of 26 M.R.S. § 1221(3)(A)(1) and disqualified Petitioner from receiving unemployment benefits from August 10, 2014, and until he earns $928.00 in employment by an employer.

Petitioner appealed to the Commission, which unanimously affirmed and adopted the Hearing Officer's decision. Petitioner requested reconsideration, but was denied. Thereafter, Petitioner filed the present appeal.

In reviewing decisions of the Maine Unemployment Insurance Commission, the Court's review is "limited to determining whether the Commission correctly applied the law and whether its fact findings are supported by any competent evidence." *See McPherson v. Maine Unemployment Ins. Comm'n*, 1998 ME 177, ¶ 6, 714 A.2d 818. The Court will not disturb a decision of the Commission "unless the

4

record before the Commission compels a contrary result." *Id.*; *see also Gerber Dental Center v. Maine Unemployment Ins. Comm'n*, 531 A.2d 1262, 1263 (Me. 1987).

Furthermore, the Court "will not overrule findings of fact supported by substantial evidence, defined as 'such relevant evidence as a reasonable mind might accept as adequate to support the resultant conclusion.'" *Lewiston Daily Sun v. Maine Unemployment Ins. Comm'n*, 1999 ME 90, ¶ 7, 733 A.2d 344 (quoting *Crocker v. Maine Unemployment Ins. Comm'n*, 450 A.2d 469, 471 (Me. 1982)). When conflicting evidence is presented, such conflicts are for the fact finder to resolve. *Bean v. Maine Unemployment Ins. Comm'n*, 485 A.2d 630, 634 (Me. 1984). In particular, credibility determinations are "exclusively the province of the Commission and will not be disturbed on appeal." *Sprague Electric Co. v. Maine Unemployment Ins. Comm'n*, 544 A.2d 728, 732 (Me. 1988). Stated differently, the Court may not substitute its judgment for that of the agency merely because the evidence could give rise to more than one result. *Dodd v. Secretary of State*, 526 A.2d 583, 584 (Me. 1987) (citing *Gulick v. Bd. of Envtl Protection*, 452 A.2d 1202, 1209 (Me. 1982)). "The burden of proof clearly rests with the party seeking to overturn the decision of an administrative agency." *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475, 479 (Me. 1982) (citation omitted).

Petitioner contends that he did not quit his job with Tel-Power, but was instead laid off via a text message from his supervisor stating that "[d]ue to your lack of transportation I have to let you go." He asserts that on August 13, 2014, after the supervisor left with the truck Petitioner had been using, he called the supervisor three or four times and eventually left him a voicemail asking if he was going to be

5

working that day or the next. Petitioner also claims that he sent the supervisor text messages asking the same, but did not receive a response until the aforementioned text message stating that the employer had to let him go. Petitioner further asserts that he sent the supervisor text messages asking him if he would reconsider and asking if there was some other way for him to get to work and keep his job. Petitioner contends the supervisor never responded to him and a co-worker refused to pick him up and drive him to work. Finally, Petitioner argues that he tried every possible way to continue working, but could not find a way to commute to work.

The Commission responds that Petitioner was not entitled to unemployment benefits because he voluntarily left his regular employment without good cause. In support, the Commission contends the employer did not initiate the separation by taking away the truck Petitioner was using as evidenced by the supervisor's testimony that Petitioner was not laid off and that the employer would have kept Petitioner working "if he could have provided himself a way back and forth to work...." (It also points out that the supervisor testified that he did not tell Petitioner he no longer had work for him, but explained:

> [Petitioner] knew he didn't have a ride back and forth to work, and [I] said I just can't supply you with a ride back and forth to work. And I never saw him again.

Furthermore, the Commission argues that Petitioner's own testimony supports a finding of voluntary resignation as evidenced by Petitioner' statements that after the truck was taken he did not make other arrangements to get to work, although he had taken a taxi or stayed in a motel during the first several weeks of his employment.

6

In addition, the Commission contends that although the Petitioner found himself in a very difficult situation regarding transportation, "he stopped going to work for personal reasons, albeit valid ones" and that therefore "this situation does not constitute good cause attributable to the employment within the meaning of 26 M.R.S. § 1193(1)." The Petitioner did not reply to the Commission's Opposition.

The Employment Security Act is a remedial statute, which "dictates a liberal construction in favor of the employee." *Brousseau v. Maine Employment Security Comm'n*, 470 A.2d 327, 329 (Me. 1984). "Any disqualification, being penal in nature, must be strictly reviewed." *Id.* Section 1193 of the Employment Security Act provides, in pertinent part, that an "individual shall be disqualified for benefits" if he or she "left regular employment voluntarily without good cause attributable to that employment." 26 M.R.S. § 1193(1)(A). An individual leaves work "voluntarily" only when "freely making an affirmative choice to do so." *Brousseau v. Maine Employment Security Comm'n*, 470 A.2d 327, 330 (Me. 1984). Furthermore, "[g]ood cause for voluntarily resigning exists when the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances *compel* the decision to leave employment." *Spear v. Maine Unemployment Ins. Comm'n*, 505 A.2d 82, 84 (Me. 1986) (quotation omitted) (emphasis in original). "Good cause must be measured against a standard of reasonableness under all the circumstances," thus, the court uses "an objective test to determine whether an employee has good cause to leave [his] employment." *Id.* (citations omitted). Personal reasons, no matter how compelling, for failing to appear to work do not constitute good cause

7

attributable to one's employment. *Snell v. Maine Unemployment Ins. Comm'n*, 484 A.2d 609, 611 (Me. 1984).

Here, the Court affirms the Commission's Decision that Petitioner voluntarily left his employment without good cause because it is supported by substantial evidence and a contrary result is not compelled. In particular, the Commission's Decision was supported by: 1) Petitioner's demonstrated ability to commute to work through the use of taxicabs or staying in nearby hotels ; 2) the fact that the employer was under no obligation to provide Petitioner transportation to and from work ; 3) the supervisor's testimony that he would have provided Petitioner more work if he could have found transportation to work ; 4) the supervisor's testimony that he told Petitioner he could not supply him with a ride and then never saw Petitioner again ; and 5) Petitioner's testimony that he told the supervisor he could not get to work without the company truck. This evidence supports the Commission's conclusion that Petitioner voluntarily left work without good cause by electing not to utilize alternative—albeit more costly—means to commute to work. While the record indicates there was some confusion between Petitioner and the supervisor regarding Petitioner's continued employment status as of August 13, 2014, the record does not compel a finding that the supervisor took the affirmative action of laying Petitioner off.

Furthermore, while Petitioner's apparent decision not to commute to work by alternative means is certainly understandable, case law supports the Commission's finding that it does not constitute good cause. In particular, *Toothaker v. Maine Employment Security Comm'n* found that a claimant voluntarily

8

resigned from her job without good cause attributable to the employment when she resigned due to a daily commute of 80 to 90 miles being too physically onerous in light of a prior work place injury to her back. 217 A.2d at 206, 208, 209. The court explained that "[d]istance of the available work from the claimant's residence, however, is not in this sense 'attributable to such employment.' Distance is rather a personal reason which may render the work unsuitable apart from any conditions of employment." *Id.* at 209-210.

Accordingly, the Court affirms the Commission's Decision and denies Petitioner's appeal.

The entry will be:

> The Maine Unemployment Insurance Commission Decision affirming the Administrative Hearing Officers Decision disqualifying Petitioner from receiving unemployment benefits, dated January 20, 2015, # 14-C-10134 is AFFIRMED.
>
> Petition DENIED.

The clerk is directed in incorporate this Order by reference in accordance with M.R.Civ.P. 79(a).

September 2, 2015

_____

JUSTICE, SUPERIOR COURT

9

Action: <u>Petition for Review</u>
         80C                              **J. Marden**     ~~J. Murphy~~

| | | |
|---|---|---|
| Michael Mills | vs. | Unemployment Insurance Cmsn |

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Michael Mills, Pro Se<br>602 Stafford Avenue<br>Bristol, CT  06010 | Nancy Macirowski, AAG<br>6 State House Station<br>Augusta, ME  04333-0006 |

Date of Entry

| | |
|---|---|
| 3/5/15 | Petition and copy of decisions, filed 3/2/15. s/Mills, Pro Se |
| 3/5/15 | Certified mail receipt, State of Maine Unemployment Insurance Commission, date of delivery 2/12/15, no signature, filed 3/2/15. |
| 3/10/15 | Letter entering appearance for UIC, filed 3/9/15. s/Macirowski, AAG |
| 3/17/15 | Administrative Record, filed 3/16/15.  s/Macirowski, AAG |
| 3/17/15 | Notice and Briefing Schedule issued.<br>Copy to Petitioner and AAG Macirowski |
| 5/15/15 | Brief, filed 5/8/15.  s/Mills, Pro Se |
| 5/15/15 | Letter indicating no objection to Petitioner's late filing of brief, filed 5/14/15. s/Macirowski, AAG |
| 6/19/15 | Brief of Respondent Maine Unemployment Insurance Commission, filed 6/4/15. s/Macirowski, AAG |
| 7/22/15 | Oral argument scheduled for 8/11/15 at 10:00.<br>Notice of Hearing sent to parties on 7/17/15. |
| 7/22/15 | Letter sent to Petitioner regarding participation in 8/11 hearing by phone.<br>s/DiMarco, Asst Clerk<br>Copy to AAG Macirowski |
| 8/21/15 | Oral argument not held on 8/11/15.  To be rescheduled. |
| 8/21/15 | Oral argument scheduled for 8/26/15 at 9:30.<br>Notice of Hearing sent to Petitioner and AAG Macirowski |
| 9/3/15 | Oral argument held 8/26/15, J. Marden presiding.<br>AAG Macirowski appeared in person, Petitioner participated telephonically.<br>Under advisement. |

9/3/15    ORDER, Marden, J. (9/2/15)
          The Maine Unemployment Insurance Commission Decision affirming the Administrative
          Hearing Officers Decision disqualifying Petitioner from receiving unemployment
          benefits, dated January 20, 2015, # 14-C-10134 is AFFIRMED.    Petition DENIED.
          Copy to Petitioner and AAG Macirowski.
          Copy to Repositories.

9/3/15    Notice of Removal of Record sent to AAG Macirowski.